JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 2:26-cv-06107-BFM **Date:** August 20, 2026

**Title:** *Antonio Moreno v. United Parcel Service, Inc., et al.*

==========================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| | |
|---|---|
| Christianna Howard | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff | Attorneys Present for Defendants |
| N/A | N/A |

**Proceedings: (In Chambers) Order Granting Plaintiff's Motion to Remand (ECF 7)**

Before the Court is Plaintiff Antonio Moreno's Motion to Remand. (ECF 7 ("Mot.").) For the reasons below, the Motion is **granted**.

## A. Background

The Complaint alleges the following facts: In September 2017, Defendant United Parcel Service, Inc. hired Plaintiff as a package handler. (ECF 1-2 ("Compl.") ¶ 17.) In early March 2019, Plaintiff began to experience anxiety, depression, and panic attacks. (Compl. ¶ 18.) Later that month, Plaintiff's medical provider diagnosed Plaintiff with a psychological condition and placed him on medical leave for a few weeks. (Compl. ¶¶ 18-19.)

Upon Plaintiff's return to work, his supervisors Isidro Delgado and Luis Romo began to harass, discriminate, and retaliate against him because of his disability. (Compl. ¶ 20.) Specifically, Delgado and Romo made "disparaging comments about Plaintiff's work and his work ethic." (Compl. ¶ 21.) Plaintiff claims that his supervisors' treatment aggravated his psychological conditions. (Compl. ¶ 20.) Throughout 2019 and 2020, Plaintiff took several medically approved leaves and alleges that he was met with discrimination, harassment, and retaliation each time he returned to work. (Compl. ¶¶ 20-25.)

==================================================================

In March 2021, Plaintiff applied for and was denied the position of package delivery driver. (Compl. ¶ 26.) He applied for the job a total of five times. (Compl. ¶ 26.) Ultimately he submitted a formal complaint alleging that Delgado and Romo were blocking him from receiving that promotion. (Compl. ¶¶ 26-27.)

In early May 2021, Plaintiff asked Romo about applying for an extended medical leave. (Compl. ¶ 29.) A few days later, Plaintiff received a letter from UPS, via Romo, stating that he had to return to work by May 12, 2021. (Compl. ¶ 30.) Plaintiff was not on leave at the time, so he ignored it. (Compl. ¶ 30.) Plaintiff's medical provider did later place him on medical leave from May 12, 2021, to May 14, 2021, and he informed UPS that he would be taking medical leave for that period. (Compl. ¶ 31.) On May 13, 2021, UPS sent Plaintiff a letter stating that he was terminated for not returning to work on May 12th. (Compl. ¶ 32.) The same day, UPS sent Plaintiff an email approving his extended medical leave from April 2021 through April 2022. (Compl. ¶ 32.) Shortly thereafter, UPS clarified that Plaintiff had not been terminated and that he was authorized to take extended medical leave until April 2022. (Compl. ¶ 33.)

On April 21, 2022, about a week after Plaintiff returned to work, UPS terminated Plaintiff for failing to provide documentation adequate to support his extended leave of absence. (Compl. ¶¶ 34-35.) That same day, Plaintiff requested that UPS re-hire him and filed a grievance with his union. (Compl. ¶ 36.) He alleges that Delgado and Romo discriminated and retaliated against him by refusing to re-hire him despite being aware of his approved extended leave. (Compl. ¶¶ 36-37.)

On April 17, 2025, Plaintiff filed a claim with the California Civil Rights Department (CRD), alleging employment harassment, discrimination, and

retaliation under the California Fair Employment and Housing Act (FEHA). (ECF 22 Ex. 1.) The same day, Plaintiff received a Notice of Case Closure and Right to Sue. (ECF 22 Ex. 2.)

On April 17, 2026, Plaintiff filed his Complaint in Los Angeles County Superior Court, alleging state law employment claims against UPS, Delgado, Romo, and twenty Doe defendants. (Compl. at 1.) UPS was served with the Complaint on May 6, 2026. (ECF 1 ¶ 6.) On June 5, 2026, UPS removed the case to federal court, citing diversity jurisdiction as the basis for removal. (ECF 1 at 10.) Defendants Delgado and Romo had not been served at the time UPS removed the case, though they have since been served. (*See* ECF 9; ECF 10.)

On June 30, 2026, Plaintiff moved to remand. (Mot. at 17.) UPS opposed the Motion (ECF 21 ("Opp'n").) Plaintiff did not file a reply. A hearing on the Motion was held on August 4, 2026, and Plaintiff was given a chance to respond orally to UPS's Opposition. (ECF 23.) The Motion is fully briefed and ready for decision.

## B. Legal Standard

Removal of a case from state court to federal court is governed by 28 U.S.C. § 1441. The statute allows removal of any civil action over which a federal district court has original jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over civil actions that present a federal question or where there is diversity of citizenship. 28 U.S.C. §§ 1331, 1332. To establish jurisdiction on diversity grounds, each defendant must be a citizen of a different state from each plaintiff, and the amount in controversy must exceed $75,000. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005). For diversity jurisdiction purposes, a corporation is deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. 28

U.S.C. § 1332(c)(1). An individual is a citizen of the State where they are domiciled—i.e., the State in which they intend to permanently reside or intend to return to. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

If the district court appears to lack subject matter jurisdiction over any case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (explaining that where a district court lacks subject matter jurisdiction, it "generally *must* remand the case to state court"). The burden of establishing the propriety of removal lies with the removing defendant. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The Ninth Circuit employs a strong presumption against removal jurisdiction, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

**C. Request for Judicial Notice**

As an initial matter, the Court grants UPS's Request for Judicial Notice. (ECF 22.) The Court may take notice of a fact that is not subject to reasonable dispute because it: (1) is "generally known within the trial court's territorial jurisdiction" or (2) can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "[C]ourts do not take judicial notice of documents, they take judicial notice of facts. The existence of a document could be such a fact, but only if the other requirements of Rule 201 are met." *Cruz v. Specialized Loan Servicing, LLC*, No. SACV 22-01610-CJC (JDEx), 2022 WL 18228277, at *2 (C.D. Cal. Oct. 14, 2022) (cleaned up). Documents in the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another case. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). That does not mean, however, that a court may take judicial notice of findings of fact from another case. *Id.*

Here, Defendant submits three documents for judicial notice. Exhibit 1 is the administrative complaint that Plaintiff filed with the California Civil Rights Department. (ECF 22 at 4-8.) Exhibit 2 is the Notice of Case Closure and Right to Sue that Plaintiff received from the Civil Rights Department. (ECF 22 at 10.) Exhibit 3 is Plaintiff's workers' compensation case information obtained from the public portal of the California Division of Workers' Compensation. (ECF 22 at 12.) These documents are public records and are thus presumptively accurate and trustworthy. *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (a court "may presume that public records are authentic and trustworthy"). Moreover, Plaintiff did not oppose the request. Defendant's Request (ECF 22) is therefore **granted** to the extent that the records are relied on below to establish facts relevant to the instant Motion.

## D. Discussion

Defendant UPS removed this action based on diversity jurisdiction, citing 28 U.S.C. §§ 1332 and 1441(b). (ECF 1 ¶ 31.) After review of the parties' briefing, the Court agrees with Plaintiff that diversity jurisdiction is lacking and thus remands this action to state court.

### 1. Diversity

Plaintiff resides in California. (Compl. ¶ 7.) He worked at a UPS office in Bell, California, from 2017 to 2022. (Compl. ¶¶ 17, 35.) There appears to be no dispute that Plaintiff is a California citizen for purposes of diversity jurisdiction.

Defendant UPS is an Ohio corporation with its principal place of business in Georgia. (Compl. ¶ 8; ECF 1 ¶ 16.) Plaintiff alleges that Defendants Delgado and Romo are both citizens of California (Compl. ¶¶ 9-10), and there is no contrary evidence before the Court (*see* ECF 1 ¶ 19). Because Plaintiff,

Delgado, and Romo all appear to be citizens of California, complete diversity between the parties does not exist.

**2. "Snap" removal**

Even so, Defendant UPS suggests that removal may be proper because it was accomplished before Defendants Delgado and Romo were served, citing 28 U.S.C. § 1441(b)(2). (ECF 1 ¶ 19). The concept of "snap" removal—i.e., removal before any forum defendant is served—is premised on language in the removal statute that provides that an "otherwise removable" case may not be removed if any of the parties "properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). That provision, however, "a limitation on removal [and not] an expansion of diversity jurisdiction." *Ross v. United Airlines, Inc.*, No. 2:22-cv-01532-SB-GJS, 2022 WL 1302680, at *2 (C.D. Cal. Apr. 30, 2022). It precludes removal, even in a case where diversity jurisdiction is present, if a properly joined and served defendant is a citizen of the State where the action is brought. By the plain text of the statute, however, the case must be "otherwise removable" before § 1441 comes into play.

Here, the case is not "otherwise removable" because there is not complete diversity between the parties—Plaintiff and two Defendants are citizens of California. 28 U.S.C. § 1332(a). Service is irrelevant when determining whether complete diversity exists. *Clarence E. Morris, Inc. v. Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969). And snap removal cannot be used to create diversity jurisdiction where, as here, the opposing parties are not completely diverse. *Trotta v. URS Federal Services, Inc.*, 532 F. Supp. 3d 985, 986 (D. Haw. 2021); *Malo v. Industrious Nat'l Mgmt. Co.*, No. CV 25-10038 FMO (SKx), 2025 WL 3301191, at *2 (C.D. Cal. Nov. 24, 2025) (refusing to let defendant "use snap removal as an end-run around the requirement of complete diversity"); *Ross*,

2022 WL 1302680, at *2 (finding similar argument not only wrong, but lacking an objectively reasonable basis, such that awarding of fees was appropriate).

The Court thus rejects UPS's argument that removal is proper because it was accomplished before Romo and Delgado were served.

### 3. Fraudulent joinder

Alternatively, UPS argues that the citizenship of Delgado and Romo should be disregarded for diversity purposes because they are fraudulently joined, or "sham," defendants. (Opp'n at 3-10.) Again, the Court disagrees.

When determining whether diversity jurisdiction exists, the citizenship of any fraudulently joined defendant may be disregarded. *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Fraudulent joinder may be established by showing: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (cleaned up)). Where a defendant invokes this second method, the federal court must remand "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants." *Id.* at 1046 (cleaned up); *see also Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) (remand required where there is a "non-fanciful possibility" of stating a claim); *Gonzalez v. J.S. Paluch Co.*, 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (a "glimmer of hope" of establishing a claim). The plaintiff's failure to state a claim must be "obvious according to the settled rules of the state." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In short, there is a "general presumption against fraudulent joinder," *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007), and the removing party bears

a "heavy burden" to establish that a party is fraudulently joined. *Grancare*, 889 F.3d at 548.

UPS presents several arguments in support of its fraudulent joinder claim, each of which the Court addresses in turn.

**a. Factual insufficiency**

In its notice of removal, UPS asserted that Plaintiff's harassment claim against Delgado and Romo failed because the allegations against them are conclusory and lack factual content. (ECF 1 ¶ 21.) In making this argument, UPS used the language of the Rule 12(b)(6) standard to argue that Plaintiff is unable to establish a cause of action against Defendants Delgado and Romo. But the standard for fraudulent joinder and the Rule 12(b)(6) standard are not the same—a claim's insufficiency under Rule 12(b)(6) does not necessarily mean that the defendant was fraudulently joined. *Grancare*, 889 F.3d at 549. In any event, the fraudulent joinder standard requires the Court to consider whether the alleged deficiencies are ones that can "possibly be cured" by amendment. *Id.* at 550. That rule resolves the question here: to the extent the Complaint fails because its allegations are conclusory, such a problem could possibly be fixed by amendment.

Defendant also argues (Opp'n at 9-10) that it would be impossible for Plaintiff to recover against Isidro Delgado because "[n]o 'Isidro Delgado' worked for [UPS] in California when the alleged harassment took place." (Opp'n at 2, 9-10.) Plaintiff alleges in his Complaint that one of his supervisors was named Isidro Delgado, and that Delgado harassed him over the course of years. (Compl. ¶¶ 20, 21-24, 26-28.) He named "Cidro Delgado," who worked in Bell, California, in his claim to the Civil Rights Department. (ECF 22 at 5.) Defendant supplies evidence that no person by that name works at UPS (ECF 21-2 at 2; ECF 21-3 at 2), but under the circumstances, the Court is inclined to

believe that, at most, Plaintiff simply has his supervisor's name wrong in some minor respect (i.e., Isidro is a middle name or "Cidro" is a nickname, etc.) and not that Plaintiff invented a sham second supervisor who worked with him in Bell, California—and had the foresight to do so back when he was filing his claim with the California Civil Rights Department. Minor errors in naming a party are not uncommon and are the kind of wrinkles that are regularly fixed via amendment. They do not lead the Court to conclude that the claims again Defendant Delgado "are frivolous as alleged and cannot possibly be cured by amendment." *Terrell v. Morgan Truck Body, LLC*, No. 5:24-cv-00824-SB-DTB, 2024 WL 2846721, at *2 (C.D. Cal. June 5, 2024); *cf. American Bldgs, Co. v. Varicon, Inc.*, 616 F. Supp 641, 643-44 (D. Mass. 1985) (acknowledging plaintiff's error in naming nonexistent corporate entity in complaint, due to confusion following corporate merger, and basing diversity analysis on the intended party, because parties are generally permitted to fix such errors through amendment).

**b. Administrative exhaustion**

UPS next argues that Plaintiff did not exhaust, or at least did not timely exhaust, his harassment claim against Delgado and Romo before filing the current civil action. Because his harassment claims were not properly exhausted—and because they are the only claims brought against Delgado and Romo—UPS argues that Delgado and Romo should be treated as sham defendants. (Opp'n at 4.)

To bring a civil action under California's Fair Employment and Housing Act, a plaintiff must exhaust the administrative remedies provided by law. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th Cir. 2001). Exhaustion involves filing a complaint with the California Civil Rights Department (formerly known as the Department of Fair Employment and Housing) and

obtaining notice of the right to sue. *Id.*; *see also* Cal. Govt. Code § 12960. With respect to the exhaustion requirement, UPS makes two related arguments: one, that Plaintiff's administrative complaint did not exhaust any claims against Delgado and Romo, and two, the Plaintiff's exhaustion complaint was not timely. (Opp'n at 4-9.)

On the first point, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to Delgado and Romo because the CRD complaint makes insufficient allegations as to them. (Opp'n at 8-9.) The Court disagrees.

The scope of a civil employment action is defined by the scope of the administrative complaint. *Lelaind v. City and County of San Francisco*, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008). Thus, as a general rule, courts will not consider "unlawful conduct not included in an administrative complaint." *Id.* There is an exception to that rule, however: courts may consider conduct alleged in the civil action where it is "like or reasonably related to the allegations in the administrative complaint, or can reasonably be expected to grow out of an administrative investigation." *Id.*

Plaintiff's CRD complaint states that "[a]s used herein, "Employer" refers to United Parcel Service, Inc. . . . and . . . every Respondent and Co-Respondent named in this complaint." (ECF 22 at 6.) The complaint lists "Cidro" Delgado and Luis Romo as co-respondents. (ECF 22 at 4.) The complaint alleges that Plaintiff was subjected to "harassment and a hostile work environment by Employer." (ECF 22 at 5.) Although the complaint is sparsely pled, under the liberal FEHA pleading standard, a court could find that at least some allegations of harassment by Delgado and Romo in the civil Complaint filed in this Court are "like or reasonably related to" the allegations of harassment in the administrative complaint. *See James v. PC Matic, Inc.*, No. CV 23-1506-MWF (KSx), 2023 WL 4291668, at *4 (C.D. Cal. May 17, 2023)

(noting that the CRD is required to liberally construe complaints filed with it, and that federal courts likewise apply a liberal pleading standard in determining whether the exhaustion requirement has been met); *Hastie v. Home Depot U.S.A.*, SACV 16-993-JLS (DFMx), 2016 WL 4414770, at *4-6 (C.D. Cal. Aug. 18, 2016) (finding no fraudulent joinder because the state court *could* find exhaustion as to a defendant not named in the administrative complaint, noting the availability of equitable exceptions and the "heavy burden" borne by a party who would argue that a defendant is fraudulently joined on this basis). Because the state court could conclude Plaintiff's harassment claims against Delgado and Romo were properly exhausted by the CRD complaint, UPS's arguments must be rejected at this stage.

UPS's second argument is that, even if the administrative complaint were adequate to exhaust claims as to Delgado and Romo, it was untimely. An administrative complaint alleging a FEHA violation must be filed within three years of the date on which the alleged unlawful conduct occurred. Cal. Gov. Code § 12960(e)(5). Here, Plaintiff alleges unlawful conduct dating back to 2019, but he did not file a civil rights complaint until 2025. Plaintiff thus appears to concede that his claims are facially untimely.[1]

Nevertheless, Plaintiff asserts that his deadline for filing his administrative complaint was equitably tolled during the pendency of his workers' compensation claim. (Mot. at 9-10.) The three-year time limit for filing

[1] The Court notes, however, that at least some of the allegations in the CRD complaint and in the civil Complaint filed in this Court relate to Plaintiff's termination on April 22, 2022, which was within three years of the filing of the CRD complaint. Plaintiff appears to concede that he will need equitable tolling to make his CRD complaint timely (Mot. at 14-15) and so the Court will assume the same—while noting this presents another potentially non-fanciful possibility that Plaintiff could state a timely exhausted claim.

an administrative complaint is treated as a statute of limitation and is subject to equitable tolling. *Rodriguez*, 265 F.3d at 900. California law recognizes that a workers' compensation claim may, in some circumstances, toll a related civil employment claim. *Elkins v. Derby*, 525 P.2d 81, 86-87 (Cal. 1974) (In Bank). Plaintiff alleges that the workers' compensation claim, filed in 2017, was resolved on April 21, 2022. (Compl. ¶ 4.) And he filed a complaint with the CRD within three years of that date. (ECF 22 at 4 (noting the CRD Complaint was filed April 17, 2025).) The basic structure of his claim is thus sound.

Nevertheless, UPS argues that Plaintiff is not possibly entitled to equitable tolling of his claims against Romo and Delgado. One reason UPS offers is that a workers' compensation claim filed in 2017 couldn't possibly toll a claim that accrued after that date. (Opp'n at 4.) The Court is not willing to make that assumption. Plaintiff submits a declaration from counsel stating, under penalty of perjury, that the workers' compensation claim "included complaints of the same psychological disabilities and harms asserted in Plaintiff's Complaint, including [harm] that was caused by the discrimination, retaliation and/or harassment Plaintiff alleges he suffered . . . from 2019 through his separation from employment in April 2022." (ECF 7-1 at 3-4.) Meanwhile Defendant has put forward no evidence about what happened during the five years that the workers' compensation case was pending—a five-year period that covers the period of Plaintiff's alleged harassment and discrimination. *See, e.g.*, *Blanchard v. Workers' Comp. Appeals Bd.*, 126 Cal. Rptr. 187, 190 (Ct. App. 1975) (contemplating amendment of workers' compensation application to add related claims); *Applied Materials v. Workers' Comp. Appeals Bd.*, 279 Cal. Rptr. 728 (Ct. App. 2021) (describing evaluation of a "cumulative injury," one caused by "repetitive mentally or physically traumatic activities extending over a period of time"). Thus, again, UPS has

not carried its burden of showing that a state court could not find the claims exhausted based solely on the filing date of the workers' compensation claim.

Second, UPS argues that Plaintiff cannot possibly meet the standard for equitable tolling as to Romo and Delgado. A court may find equitable tolling where a plaintiff pursues one among a number of available legal remedies, and "rests upon the reasoning that a claim should not be barred 'unless the defendant [in such circumstances] would be unfairly prejudiced if the plaintiff were allowed to proceed.'" *Cervantez v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993). Plaintiff can't possibly make that showing as to Romo and Delgado, argues UPS, because Romo and Delgado had no notice of his workers' compensation claim and would be prejudiced if Plaintiff were permitted to proceed against them.

A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: (1) timely notice to the defendants in filing the first claim; (2) lack of prejudice to the defendants in gathering evidence for the second claim; and (3) good faith and reasonable conduct in filing the second claim. *Id.* (describing California's equitable tolling test).

UPS argued that Plaintiff cannot satisfy the first requirement: that the filing of the workers' compensation claim put Delgado and Romo on notice of the possibility of civil claims against them. UPS points to the fact that Delgado and Romo were not parties to the workers' compensation claim. (Opp'n at 5.) Under California law, however, it is possible for equitable tolling to apply even as to a party that was not named in the first action. Instead, when it comes to parties that are related to the entity named in the first action, what matters is whether the party was actually put on notice of the need to investigate facts that form the basis of the second claim. *Hopkins v. Kezierski*, 170 Cal. Rptr. 3d

551, 563 (Ct. App. 2014) ("[T]he mere fact the defendants in this case are not the same as in the workers' compensation proceeding does not establish that equitable tolling does not apply.").

On that question, UPS points to Romo's Declaration (ECF 21-2), attached to the Opposition, in which he states that he has "no recollection" of being informed that Plaintiff filed a workers' compensation lawsuit against UPS, and that before this lawsuit was filed, he was "not aware of what injury [Plaintiff] alleged he got at UPS or whether [Plaintiff] made any allegations about [Romo] in any workers' compensation case." (ECF 21-2 ¶ 4.)

Courts have been hesitant to premise a finding of fraudulent joinder on a single, self-serving declaration of an individual who has everything to gain by his statement—here, dismissal of the claims against him as untimely. *Negherbon v. Wells Fargo Bank*, No. 15-cv-02368-JCS, 2015 WL 6163570, at *8 (N.D. Cal. Oct. 21, 2015) (the "heavy burden" of opposing a motion to remand is not "overcome with a single self-serving declaration of a named Defendant, when there has been no discovery and the declaration is contradicted by allegations in the complaint"). Indeed, "[w]ere courts to find fraudulent joinder whenever presented with a defendant's self-serving affidavit, few cases would ever be remanded and federal jurisdiction would greatly expand." *Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.*, No. 08-CV-141-LRR, 2009 WL 395162, at *6 (N.D. Iowa Feb. 17, 2009); *Berg v. Ferring Pharm., Inc.*, No. 2:16-cv-03656-ODW, 2016 WL 4974942, at *5 (C.D. Cal. Sept. 16, 2016) (citing *Mattress Warehousing* and declining to find fraudulent joinder based on a self-serving declaration denying liability); *see also Grancare*, 889 F.3d at 551 ("[A] denial, even a sworn denial, of allegations does not prove their falsity . . . . ").

Here, the allegations in Plaintiff's Complaint controvert at least Romo's claim that he was entirely unaware of the nature of Plaintiff's claimed injury.

(*See* Compl. ¶ 29 (alleging that Plaintiff spoke to Romo in May 2021 about his recent medical leave due to his disability and asked his supervisor for a reasonable accommodation for his disability, specifically, an extended medical leave so that he would have the time to get well).) Whether UPS's investigation of the workers' compensation involved Romo in any way is information that is uniquely in Defendants' possession, but Plaintiff claims that a reasonable workers' compensation investigation would have involved at least contacting Plaintiff's supervisors, and Plaintiff has not yet had the opportunity to take discovery to confirm that supposition. Courts should be slow to "resolve a potentially-disputable factual question, pre-discovery, in order to conclusively determine that a plaintiff cannot make out a claim against a particular defendant." *Lomen v. Schmalzried*, CV 22-3302-GW-JCx, 2022 WL 3647795, at *4 (C.D. Cal. Aug. 4, 2022). "Otherwise, non-diverse defendants in state court would be encouraged to remove cases to federal court before a plaintiff has any chance for discovery, present a one-sided factual submission to that federal court, and hope that the federal court will effectively decide the question of their liability on the merits before the plaintiff has any real chance to get his, her or its case off of the ground." *Id.*

In any case, even if the Court were to find that Romo's declaration established that Plaintiff could not show equitable tolling as to him, it would still leave Plaintiff's claims against Delgado. As noted above, there is a dispute as to Defendant Delgado's identity and there is no evidence—self-serving or otherwise—with respect to his knowledge of the workers' compensation case. Because UPS bears the burden, and because any ambiguities must be resolved in favor of remand, questions surrounding Delgado alone suffice to conclude that Plaintiff *could* state an equitable tolling claim against Delgado. *Am. Fam. Connect Prop. & Casualty Ins. Co. v. Hyundai Motor Am.*, No. 8:24-cv-01141-DOC-DFM, 2024 WL 4454097, at *6 (C.D. Cal. Oct. 8, 2024) (resolving disputes

of fact regarding tolling of the statute of limitations in favor of the plaintiffs and holding that the defendants did not meet their burden in showing fraudulent joinder).

UPS argues, second, that Plaintiff will not be able to show that Romo was not prejudiced in his ability to collect evidence concerning Plaintiff's claim. Romo claims that, had he been aware of Plaintiff's allegations sooner, he would have taken steps to gather evidence to defend himself. (ECF 21-2 at 2-3.) As a practical matter, however, a supervisor accused of harassment at work or discrimination in work-related decisions is not likely to conduct his *own* workplace investigation; he is likely, instead, to ride the coattails of his employer's investigations, at least so long as the employer and supervisor's interests are aligned. Thus, courts consider whether a party is in "evidentiary privity" with another entity who shared their motivation to collect evidence, such that they would not be prejudiced by the failure to gather and preserve their own evidence. *Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 688 (Ct. App. 1983) (finding it was "unnecessary for the Pasadena retirement board to gather and preserve its own evidence" because "that evidence was being assembled for it by the defendant in the first action, the Pasadena Fire Department"). In other words, Romo's assertion that *he* did not conduct any investigation of harassment allegations does not put the question beyond doubt, because it is unclear whether this is a case "where notice to one defendant results in the timely collection of the very evidence needed by the second defendant and where the first is only too happy to share all that evidence with the second." *Id.*

Finally, Defendant argued that Plaintiff would be unable to satisfy the third element of equitable tolling, reasonable and good faith conduct by Plaintiff and his counsel, because Plaintiff waited far too long to bring his harassment claim against Romo and Delgado. Once again, the Court disagrees.

In *Cervantez v. City of San Diego*, the court concluded that it could not, as a matter of law, find that the plaintiff did not act reasonably or in good faith where he timely initiated administrative efforts seeking relief and timely filed the subsequent civil action after the administrative proceedings were completed. 5 F.3d at 1277. The *Cervantez* court found no evidence that the plaintiff acted "other than reasonably and in good faith in bringing [the] action," and thus no basis to find, as a matter of law, that Plaintiff could not show entitlement to equitable tolling. *Id.* Those facts mirror the ones in this present case: Plaintiff here alleges he timely initiated his workers' compensation claim, timely filed the CRD complaint, and then timely proceeded to this Court. (Compl. ¶¶ 3-5.) And, moreover, there is no evidence either way about the reason for Plaintiff's delay in filing. In this posture, the Court cannot find as a matter of law that Plaintiff could not show good faith simply because of the delay in filing. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1138 (9th Cir. 2001) (noting that the requirement of "good faith and reasonable conduct" is not well defined in California case law, and that where plaintiff had complied with applicable deadlines, the court had no basis at the Rule 12(b)(6) stage to find the requirement not met).

Defendant points to caselaw that suggests that some delay is so extreme that, as a matter of law, the party is not entitled to equitable tolling. (Opp'n at 7-8.) The Court cannot agree. California's equitable tolling standard is a "fact-intensive test"—so much so that the courts generally defer its consideration until the summary judgment or trial phases of a case. *Cervantez*, 5 F.3d at 1276. An extreme and entirely unexplained delay might ultimately fail to meet this standard. *See Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2026 WL 1283383, at *6 (N.D. Cal. May 11, 2026) (dismissing complaint for failure to allege good faith conduct such as would support equitable tolling, and noting that "the Court previously dismissed Plaintiff's CIPA claims 'with leave

to amend to the extent he can allege facts justifying his delay in filing the complaint' and therefore plausibly allege equitable tolling"). But at the very least, the Court would have to grant leave to amend so that Plaintiff could attempt to justify the delay in filing the complaint. *Id.* In this posture, then, the Court cannot say that Plaintiff's claim for equitable tolling is "frivolous as alleged and cannot possibly be cured by amendment." *Terrell*, 2024 WL 2846721, at *2.

* * * * *

For all these reasons, the case must be remanded to the state court. The above discussion should give Plaintiff little comfort about the strength of his claims—there are significant hurdles ahead for his claims against Delgado and Romo. The Court does not decide any of the above questions in Plaintiff's favor; it only finds that, construing all doubts in favor of remand and holding UPS to its heavy burden, Delgado and Romo are not sham defendants whose presence should be ignored for diversity purposes. And because Delgado and Romo are not sham defendants, the Court lacks diversity jurisdiction under 28 U.S.C. § 1332.

## E. Conclusion

For the reasons stated above, the Court **grants** the Motion to Remand (ECF 7) and **remands** this action to Los Angeles County Superior Court.

In light of the Court's conclusion on this Motion, the Court **denies** the pending Motion to Dismiss and Motion for Judgment on the Pleadings (ECF 11, 14) without prejudice to Defendants presenting those issues to the state court upon remand.

Initials of Preparer: ch